Personnel Appeals Board
No. 98-710

APPEAL OF MARK ARMAGANIAN & a.

(New Hampshire Personnel Appeals Board)

November 13, 2001

*Donchess & Notinger, P.C.*, of Nashua (*James W. Donchess* on the brief and orally), for the petitioners.

*Philip T. McLaughlin*, attorney general (*Walter L. Maroney*, senior assistant attorney general, and *Sheri J. Kelloway*, for the department of safety, on the brief, and *Mr. Maroney* orally), for the respondent.

BROCK, C.J. The petitioners, Troopers Mark Armaganian and Theodore Korontjis (troopers), appeal a decision of the personnel appeals board (PAB). The troopers challenge both the PAB's conclusion that they conspired to obtain an unauthorized witness fee for Trooper Armaganian and the PAB's decision to uphold the sanction of major discipline for each trooper. We reverse.

The following facts are not in dispute. Armaganian was scheduled to appear in Hampton District Court to prosecute a speeding case on the morning of January 19, 1995. Because he was off-duty on January 19, 1995, Armaganian hoped to find another trooper to settle the case for him so that he would not need to go to court on his day off. Korontjis, who was on duty that day, spoke with Armaganian by telephone and agreed to handle his speeding case for him.

Korontjis settled Armaganian's case when he was at Hampton District Court on January 19, 1995, and Armaganian did not need to testify in court. Nevertheless, Korontjis entered Armaganian's name on the court witness list and, at Armaganian's request, completed and signed Armaganian's name to a certification of off-duty court appearance, indicating that Armaganian was entitled to a witness fee for the case which Korontjis had settled. Armaganian later completed a weekly duty report indicating that he was entitled to a witness fee on January 19, 1995, in connection with the disposition of the case scheduled for that day in Hampton District Court.

The New Hampshire Division of State Police conducted an internal investigation to determine if the troopers had conspired to obtain an unauthorized witness fee for Armaganian. In connection with the investigation, the troopers were required to submit to polygraph examinations.

Following a hearing, both troopers were notified that they would be suspended without pay for eleven days on charges that they "conspired . . . to obtain an unauthorized court witness fee [for Armaganian] when both Trooper Armaganian and Trooper Korontjis knew that Trooper Armaganian was not in attendance in court." Under the applicable rules, a suspension in excess of ten days is considered major discipline, rendering both troopers ineligible for promotion for a period of seven years.

The troopers appealed and the PAB held a *de novo* hearing. At the hearing, the parties offered conflicting evidence about precisely what had transpired on the morning of January 19, 1995. The troopers testified that Armaganian called the station to try to find someone to handle his case at Hampton District Court that morning. He reached Korontjis. According to both troopers, they discussed Korontjis' handling the case, and Korontjis told Armaganian that he would try to resolve the case by plea and would

call Armaganian back if he were unable to do so. However, the troopers denied that they discussed Korontjis' signing Armaganian in at the courthouse. Armaganian testified that Korontjis agreed to call him back to let him know if the case had been resolved.

According to Armaganian, he began to get nervous around 8:30 a.m. because he had not yet heard from Korontjis. He knew that if Korontjis did not reach a plea with the speeder, and if Armaganian were not there to prosecute the case, he would be disciplined for allowing the case to be dismissed for lack of prosecution. Therefore, according to Armaganian, he drove to Hampton District Court. When he arrived, he saw Korontjis in the parking lot, where Korontjis told him that he had resolved the case. Because he believed he was entitled to be paid for going to the court, he asked that Korontjis sign him up on the court list indicating that he had been present. Korontjis testified that he saw Armaganian in the parking lot, and also believed Armaganian was entitled to be paid. Therefore, he put Armaganian's name on the list. No other witnesses testified at the PAB hearing that they had seen Armaganian at the courthouse that day.

Trooper Debra Winters offered a conflicting version of the events of the morning of January 19, summarized in the PAB decision as follows:

> Trooper Debra Winters testified that on the morning of January 19, 1995, just before 8:00 a.m. at the Troop A barracks, Trooper Korontjis asked her if she had any cases scheduled that day in Hampton District Court. When she replied that she did not, he informed her that he needed to call the court to see if one of his own cases had been continued. He also commented that he had to be at Hampton District Court to ". . . take care of something for Mark because he was too [expletive] lazy to get out of bed." Ms. Winters testified that a short time later, the dispatcher called down to the trooper's room to say that Trooper Armaganian was on the phone, or that Trooper Korontjis should telephone Trooper Armaganian. Although she was unsure who initiated the call, she was present during the ensuing telephone conversation between Troopers Armaganian and Korontjis. Trooper Winters testified that she overheard Trooper Korontjis say, "Don't worry about it, brother, I'll just take care of you," and "I'll take care of it." She testified that later in that same conversation, she heard Trooper Korontjis tell Trooper Armaganian, "Don't worry about it. I'll just sign your name in."

The PAB found Trooper Winters' testimony credible and concluded that there was sufficient credible evidence that Troopers Armaganian and Korontjis agreed to have Korontjis enter Armaganian's name on the witness list at Hampton District Court when both troopers knew that Armaganian did not intend to appear for court that day. The PAB also concluded that "the requisite acts in furtherance of the agreement occurred when Trooper Korontjis entered Trooper Armaganian's name onto the Hampton District Court witness list, and when he later completed the off-duty certification of court appearance form for Armaganian."

The troopers moved for a rehearing arguing, in pertinent part, that the board had misapplied the law of conspiracy. According to the troopers, the board erred because it "ignored the undisputed evidence that Trooper Armaganian traveled to the Hampton District Court prepared to testify." According to the troopers, under the "portal to portal rule" regarding overtime compensation, if Trooper Armaganian traveled to the Hampton District Court prepared to testify, then the allegations against him should have been dismissed because he did not receive an unauthorized witness fee. Furthermore, even if there had been a "conspiracy" to obtain unauthorized fees, the conspiracy had been abandoned because Armaganian had traveled to the court to testify, and any subsequent acts undertaken by Trooper Korontjis could not have been in furtherance of the conspiracy.

The PAB affirmed its decision. In addressing the appellant's argument regarding the finding of conspiracy, the PAB stated:

> The evidence does not support a finding that Trooper Armaganian "appeared" at the Hampton District Court, nor does it weigh in favor of the Appellant's claim that Trooper Armaganian's appearance at the courthouse terminated or aborted the conspiracy. The Appellants failed to offer any plausible explanation why Trooper Armaganian did not enter the courthouse and sign himself in if, in fact, he had traveled to the Hampton District Court for the purpose of prosecuting his case. Similarly, the Appellants failed to offer a plausible explanation why Trooper Armaganian failed to request reimbursement for travel that day in his personal vehicle, which both parties agreed he would have been entitled to receive if he were entitled to "portal to portal" compensation.
>
> . . . .

The appellants argued that the Board's decision ignored the testimony of [a number of witnesses] that state troopers required to appear in court on their days off are entitled to overtime compensation from the moment they leave their homes. There is no dispute how compensation is calculated when an officer is entitled to receive such compensation. However, the evidence does not reflect that Trooper Armaganian was entitled to receive any compensation.

Following the denial of their motion for rehearing, the troopers appealed to this court. We accepted the appeal and ordered the PAB to prepare a record within sixty days. The PAB failed to timely file a certified copy of the record, filing it over twenty months late. We therefore requested that the parties brief the issue of whether the prejudice caused by the board's delay in filing a certified copy of the record warrants granting the relief the petitioners seek.

The troopers argue on appeal that: (1) the board's decision was unjust and unreasonable because the board incorrectly applied the law of conspiracy to determine that the appellant's conduct warranted the discipline imposed by the division of State police; (2) the PAB erred as a matter of law in admitting into evidence the result of polygraph examinations; and (3) the court should vacate the PAB's decision because of the PAB's lengthy delay in preparing the record in this case. Because we agree, for the reasons that follow, that the board's decision that the troopers had conspired to obtain an unauthorized witness fee was unjust and unreasonable, we do not reach the troopers' remaining arguments.

This is an appeal from a final decision of the New Hampshire Personnel Appeals Board pursuant to RSA 21-I:58, II, RSA 541:6 and New Hampshire Supreme Court Rule 10. We will therefore affirm the decision unless we are satisfied, by a clear preponderance of the evidence before us, that the order is unjust or unreasonable. *See* RSA 541:13 (1997); *Appeal of Boulay,* 142 N.H. 626, 627-28 (1998).

■ While we recognize that what is at issue here is not an action for civil conspiracy, but rather a personnel decision made by the division of State police, existing conspiracy law, and the principles underlying it, inform our judgment about whether the PAB's decision in this case was unjust or unreasonable. "The gist of a civil action for conspiracy is not conspiracy as such, without more, but the damage caused by the acts committed pursuant to the formed conspiracy. There must be something done pursuant to the conspiracy which harms the plaintiff." *Gov. Grove Condo. Ass'n v. Hill Dev. Corp.,* 414 A.2d 1177, 1182 (Conn. Super. 1980)

(citations omitted); *see also Durant Software v. Herman*, 257 Cal. Rptr. 200, 206 (Ct. App. 1989). Thus, under New Hampshire law, the elements of a civil conspiracy are: "(1) two or more persons . . .; (2) an object to be accomplished (*i.e.*, an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an *agreement* on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 47 (1987). A conspirator may avoid liability for the conspiracy by withdrawing from, or abandoning the conspiracy. *Cf.* 16 AM. JUR. 2D *Conspiracy* § 26 (1983) (where an overt act is required for a criminal conviction, a conspirator may avoid guilt by withdrawing from the conspiracy prior to the commission of the overt act).

As noted above, the PAB was presented with conflicting evidence about the contents of the January 19, 1995 telephone conversation between Troopers Korontjis and Armaganian. According to the troopers, they discussed Korontjis' handling the case, and agreed that Korontjis would try to resolve the case by plea and would call Armaganian back with the result. The troopers denied that they discussed Korontjis' signing Armaganian in at the courthouse. Trooper Winters, by contrast, testified that she heard Korontjis tell Armaganian, "Don't worry about that. I'll just sign your name in." Although the troopers attempted to discredit Winters at the hearing, the PAB found Trooper Winters' testimony credible, a finding we will not disturb. *See Bailey v. Musumeci*, 134 N.H. 280, 286 (1991) (as the fact finder, the trial court has the discretion to credit or not credit the testimony of witnesses before it). Nevertheless, simply finding that her testimony was credible, that Korontjis entered Armaganian's name onto the Hampton District Court witness list and that he later completed the off-duty certification of court appearance form for Armaganian is not enough to support the conclusion that the troopers conspired to obtain an unauthorized witness fee.

The troopers offered uncontroverted testimony at the hearing that under the "portal to portal" rule a trooper who is off-duty and has to appear in court is paid the contractual minimum for his appearance even if the case is resolved before the trooper reaches the courthouse or even if the trooper is informed on his or her way to the courthouse that the case will not proceed. While the board is not required to believe even uncontroverted evidence, *see In re Buttrick*, 134 N.H. 675, 676 (1991), the board did not specifically find that a trooper is not entitled to the minimum overtime compensation if he travels to court with the intention of resolving a case. Nor has the State denied, either below or on appeal, that a trooper who is off-duty and has to appear in court is entitled to overtime compensation from the moment he drives to the courthouse with the

intention of appearing in court. Therefore, we assume, for the purposes of this appeal, that the board found that the "portal to portal" rule does exist, and is applicable in this case.

Given the existence of the "portal to portal" rule, we now consider whether, in order to find that the troopers conspired to obtain an unauthorized witness fee, the PAB was required to first find that Armaganian did not travel to Hampton District Court on the morning of January 19, 1995, to prosecute the case.

■ The PAB concluded that the State had proven that Korontjis and Armaganian had agreed that Korontjis would sign Armaganian's name to the list of court witnesses at a time when both men knew that Armaganian had no intention of appearing in court. The PAB also concluded that the "overt acts" in furtherance of the agreement occurred when Korontjis entered Armaganian's name onto the Hampton District Court witness list, and later completed the off-duty certification of court appearance form for Armaganian. Unless the board rejected the troopers' uncontroverted testimony that Armaganian drove to the courthouse that morning prepared to prosecute the case, Armaganian would have been entitled to overtime compensation under the "portal to portal" rule. Under these circumstances, Korontjis' subsequent acts of entering Armaganian's name on the witness list and completing the certification of court appearance forms would have been innocent acts, rather than acts in furtherance of an unlawful agreement. A finding that Armaganian went to the courthouse prepared to testify would therefore compel the conclusion either that there was no conspiracy, or that the conspiracy had been abandoned as soon as Armaganian left his home en route to court, prior to the commission of the alleged overt acts. *See Jay Edwards*, 130 N.H. at 47; 16 AM. JUR. 2D *Conspiracy* § 26 (1983). Therefore, an explicit finding that Armaganian did not travel to court prepared to testify is critical to a finding of conspiracy to obtain unauthorized witness fees.

We disagree with the dissent's assertion that the record contains an explicit finding that Armaganian did not travel to the court prepared to testify. In response to the troopers' motion for rehearing, the PAB stated that "the evidence does not support a finding that Trooper Armaganian 'appeared' at the Hampton District Court." A finding that Trooper Armaganian did not "appear" is not equivalent to a finding that Trooper Armaganian did not travel to Hampton District Court prepared to testify. Under the portal to portal rule, Armaganian would be eligible for overtime compensation if he drove to the courthouse with the intention of appearing in court, whether or not he entered the courthouse.

■ In light of this analysis, we conclude that the board erred in finding that a conspiracy existed without also explicitly rejecting the troopers' testimony that Trooper Armaganian went to the Hampton District Court prepared to prosecute the case, and therefore hold that the PAB's decision was unjust and unreasonable. Ordinarily, such a holding would result in remand to the agency. *See, e.g., Foote v. State Personnel Comm'n*, 116 N.H. 144, 148 (1976). However, we conclude, for the reasons that follow, that remand to the PAB would be inappropriate in this case.

The events giving rise to the disciplinary action at issue in this case occurred on January 19, 1995. Following the imposition of major discipline, the troopers appealed to the PAB, which held a hearing in September and October 1995. On January 31, 1997, the PAB affirmed the Division's finding that the troopers had conspired to obtain Armaganian a witness fee even though he did not go to court. The troopers filed a motion for a rehearing. On October 15, 1998, the PAB issued an order denying the motion for rehearing, and the troopers appealed to this court.

We accepted this appeal on January 29, 1999, and ordered the PAB to prepare a record within sixty days. When the PAB failed to do so we ordered that the State show cause why the relief sought in the appeal should not be granted for failure of the board to file the certified copy of the record. The PAB finally forwarded a record of the proceedings to this court on December 4, 2000.

Largely due to the PAB's delays, both in responding to the troopers' motion for rehearing and in filing the record with this court, reconsideration of the case on remand would occur more than six years after the events that gave rise to the disciplinary action at issue. Given the nature of our decision today, the delays therefore preclude the PAB both from reconsidering its opinion without holding a rehearing, and from holding a rehearing. We have held that the decision in this case was unjust and unreasonable because the PAB failed to specifically find that Armaganian did not travel to the courthouse on January 19, 1995 prepared to testify. Armaganian and Korontjis were the only witnesses who offered direct evidence on that issue. Therefore, the PAB's factual finding would turn on whether it found the troopers' testimony credible. Because six years will have passed since the troopers testified and because a transcript provides no indication of a witness's tone or demeanor, "two useful tools in the assessment of credibility," *State v. Giles*, 140 N.H. 714, 719 (1996), the PAB may not rely on the record alone in revisiting this issue. Furthermore, because memories of the events of January 19, 1995 have likely faded, and witnesses may now be unavailable, we conclude that the length of the delay has substantially prejudiced the troopers, and

precludes the possibility of a rehearing. Under these circumstances, remand to the agency would serve no purpose.

*Reversed.*

BRODERICK and DALIANIS, JJ., concurred; DUGGAN, J., with whom NADEAU, J., joined, dissented.

DUGGAN, J., dissenting. The New Hampshire Division of State Police charged State Troopers Mark Armaganian and Theodore Korontjis with conspiring to obtain an unauthorized court witness fee for Trooper Armaganian. After an internal investigation and a full evidentiary hearing, the division of State police found the troopers guilty of a major disciplinary infraction and imposed an eleven day suspension. Both troopers appealed to the Personnel Appeals Board (PAB). After a two day *de novo* evidentiary hearing at which twelve witnesses testified, the PAB determined that the troopers conspired to obtain an unauthorized witness fee for Trooper Armaganian and that the discipline imposed by the division of State police was "an appropriate sanction in light of [the] nature of the offense."

Because this matter has already been reviewed by both the division of State police and the PAB, our appellate review is narrowly defined by RSA 541:13 (1997):

> [All] findings of the commission upon all questions of fact properly before it shall be deemed *prima facie lawful and reasonable*; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of evidence before it, that such order is unjust or unreasonable.

(Emphasis added.)

The majority explains that under the "portal to portal" rule, Trooper Armaganian would have been entitled to overtime compensation if he drove to the courthouse on January 19, 1995 prepared to prosecute the case. Thus, the majority concludes that the PAB's decision was unjust and unreasonable because it failed to "explicitly" reject the troopers' testimony that Trooper Armaganian traveled to the courthouse to prosecute the case. This conclusion is erroneous because the record in this case does in fact contain an explicit finding that Trooper Armaganian did not drive to Hampton District Court on the morning of January 19, 1995.

In their motion for rehearing filed with the PAB, the troopers argued that the PAB's decision was "in error because it ignores the undisputed

evidence that Trooper Armaganian traveled to Hampton District Court prepared to testify." In denying the motion for rehearing, the PAB explained:

> The evidence does not support a finding that Trooper Armaganian "appeared" at the Hampton District Court, nor does it weigh in favor of the Appellants' claim that Trooper Armaganian's appearance at the courthouse terminated or aborted the conspiracy. The Appellants failed to offer any plausible explanation why Trooper Armaganian did not enter the courthouse and sign himself in if, in fact, he had traveled to the Hampton District Court for the purpose of prosecuting his case. Similarly, the Appellants failed to offer a plausible explanation why Trooper Armaganian failed to request reimbursement for travel that day in his personal vehicle, which both parties agreed he would have been entitled to receive if he were entitled to "portal to portal" compensation.

By finding that "[t]he evidence does not support a finding that Trooper Armaganian 'appeared' at the Hampton District Court," the PAB explicitly rejected Trooper Armaganian's testimony that he traveled to Hampton District Court on January 19, 1995. Any doubt as to the meaning of this finding is clarified by the PAB's statement that it lacked "any plausible explanation why Trooper Armaganian did not enter the courthouse and sign himself in if, in fact, he had traveled to Hampton for the purpose of prosecuting his case" and that it further lacked "a plausible explanation why Trooper Armaganian failed to request reimbursement for travel that day in his personal vehicle, which both parties agreed he would have been entitled to receive . . . ." Clearly, the Board concluded that the troopers' version of the events was unconvincing and relied on this lack of credibility to conclude that Trooper Armaganian did *not* travel to the Hampton District Court on January 19, 1995.

The PAB's factual findings are presumed to be lawful and reasonable. *Appeal of Booker*, 139 N.H. 337, 339-40 (1995). The majority's disregard of the PAB's finding is inconsistent with the standard of review set forth in RSA 541:13, which requires findings of the PAB to be deemed *prima facie* lawful and reasonable. In reviewing the PAB's decision, this court may therefore reverse *only* if it is satisfied "by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13.

Here, there is no evidence that the PAB's decision is unjust or unreasonable because there is considerable evidence to support the PAB's finding that Trooper Armaganian did not travel to the Hampton District

Court on January 19, 1995. First, as the majority acknowledges, Trooper Winter credibly testified regarding her conversation with Trooper Korontjis and the conversation that she overheard between Trooper Korontjis and Trooper Armaganian. This evidence strongly suggested that Trooper Korontjis was going to handle Trooper Armaganian's case in Hampton District Court while Trooper Armaganian stayed home. Second, the court security officer testified that "he normally can verify that those persons whose name appear on the witness lists were actually present in court on the date(s) specified ... [and] he was certain he had not seen Trooper Armaganian in the courthouse that day." Third, the court security officer testified that the clerk of court told him that he "had also not seen Trooper Armaganian in or around the court that day." Finally, the PAB's decision is supported by the fact that, somewhat conveniently, the only person who could corroborate Trooper Armaganian's claim that he traveled to the courthouse parking lot was Trooper Korontjis.

Our sole task on appeal is to review the record and determine whether competent evidence supports the PAB's decision. Because there is competent evidence in the record to support the PAB's factual findings, we are statutorily required to defer to the PAB's decision. *Appeal of Martino*, 138 N.H. 612, 614 (1994). As the troopers have failed to satisfy their burden of proving by a clear preponderance of the evidence that the PAB's decision was either unjust or unreasonable, I respectfully dissent.

NADEAU, J., joins in the dissent.