Personnel Appeals Board
No. 2005-592

## APPEAL OF TRACY WATERMAN
### (New Hampshire Personnel Appeals Board)

Argued: October 11, 2006
Opinion Issued: November 30, 2006

*Donchess & Notinger, P.C.*, of Nashua (*James W. Donchess* on the brief and orally), for the petitioner.

*Kelly A. Ayotte*, attorney general (*Nancy J. Smith*, senior assistant attorney general, on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, Tracy Waterman, appeals a decision of the New Hampshire Personnel Appeals Board (PAB) affirming her dismissal by the respondent, the New Hampshire Department of Safety, Division of State Police (Division), from her employment as a state trooper for willful insubordination because she refused to take a polygraph test. N.H. ADMIN. RULES, Per 1001.08(a)9. We affirm.

The PAB found or the record reflects the following facts. On August 29, 2003, Vicky Lamere, the wife of a state trooper, informed one of the petitioner's supervisors, Lieutenant Nedeau, that the petitioner had made threats against her supervisors. Lamere said that the petitioner had said that she did not know how she might react or what she might do if Nedeau or her other supervisor, Sergeant McCormack, yelled at her. The petitioner told Lamere that she would "like to put a bullet in Lieutenant Nedeau's head" and "deck Sergeant McCormack."

The Division began an internal investigation of these allegations on September 3, 2003. Investigators interviewed several witnesses, including Lamere and the petitioner, who denied making any threats. The investigators found Lamere to be more credible than the petitioner, and, therefore, they recommended that the petitioner be ordered to submit to a polygraph examination. Colonel Gary Sloper, the Division director, authorized the investigators to conduct a polygraph test of the petitioner on September 15, 2003.

The petitioner arrived for the polygraph examination with her attorney and advised that she would not take the test. The investigating officer explained that her refusal could mean that she violated an order from Colonel Sloper and that she could receive discipline for this, up to and including dismissal. The petitioner indicated that she understood and still would not take the test.

In a September 18, 2003 memorandum, Colonel Sloper notified the petitioner of his intent to dismiss her from her employment as a state trooper because of willful insubordination for failing to take the polygraph examination as he had ordered. Colonel Sloper met with the petitioner and her attorney on September 22, 2003; her employment was terminated that day.

The petitioner appealed her termination to the PAB. The petitioner acknowledged that the Division's professional conduct standards authorized the use of polygraph examinations during internal investigations. Specifically, section 26-E.5.1 of those standards provides, in pertinent part:

> During the course of internal affairs investigations, if conditions are such that certain investigatory procedures are

appropriate, Division members may be compelled to provide specialized information or submit to testing or examinations. These procedures shall be specifically directed and narrowly related to the matter under investigation. . . . Examples of special investigative procedures which may be compelled during the course of an administrative internal affairs investigation include . . . polygraph examinations.

She further acknowledged that Colonel Sloper had ordered her to take a polygraph test and that she had refused. She also admitted that she was advised in the presence of counsel that her refusal to comply with Colonel Sloper's order could result in disciplinary action, which could include dismissal.

The petitioner urged the PAB to rule that her termination for refusing to take the polygraph test was unlawful because the test is unreliable and degrading and its results are inadmissible in court. She also argued that the order that she submit to the polygraph test was retaliatory. The PAB disagreed and upheld her termination. The petitioner filed a motion for rehearing, which the PAB denied.

This is an appeal from a final decision of the PAB pursuant to RSA 21-I:58, II (2000), RSA 541:6 (1997) and Supreme Court Rule 10. The petitioner has the burden of demonstrating that the PAB's decision was clearly unreasonable or unlawful. RSA 541:13 (1997). The PAB's findings of fact are deemed to be *prima facie* lawful and reasonable. *Id.* We will affirm the decision unless we are satisfied, by a clear preponderance of the evidence before us, that it is unjust or unreasonable. *See* RSA 541:13; *Appeal of Armaganian*, 147 N.H. 158, 162 (2001).

Under Section 1.3.4 of the Division's professional standards of conduct, an employee is willfully insubordinate when he or she "deliberately and/or intentionally disobeys a lawful order." The petitioner contends that, contrary to the PAB's finding, she did not engage in willful insubordination because the order that she take the polygraph test was unlawful. The petitioner argues that the order was unlawful because: (1) it involved a polygraph test, which she contends is unreliable, unfair and degrading; and (2) the order was motivated by retaliation.

I

We first address whether the order was unlawful because it involved taking a polygraph test. Whether a police officer may be terminated for failing to take a polygraph test is an issue of first impression in New Hampshire. We therefore look to other jurisdictions for guidance. *See Stateline Steel Erectors v. Shields*, 150 N.H. 332, 334 (2003).

"[C]ourts have generally held that a public employer can require a policeman to submit to a polygraph test as part of an investigation of his conduct." Nagle, *The Polygraph in the Workplace*, 18 U. RICH. L. REV. 43, 68 (1983); *see also* Annotation, *Refusal to Submit to Polygraph Test*, 15 A.L.R.4TH 1207, 1209-18 (1982). "Courts have concluded that, since a police officer must be above suspicion of violation of the laws that he is sworn to enforce ... and must perform his duty to investigate crime and maintain the public trust, questions concerning the propriety of his conduct must be resolved promptly." Nagle, *supra* at 68. "In furtherance of this objective, polygraph tests can be administered, and an officer's refusal to submit to such an examination can result in his dismissal." *Id.*

Thus, in *Eshelman v. Blubaum*, 560 P.2d 1283, 1285 (Ariz. Ct. App. 1977), for instance, the court reasoned, "[T]he compulsory use of the polygraph during departmental investigations is consistent with the maintenance of a police or sheriff's department that is of the highest integrity and beyond suspicion." Therefore, the court ruled that a police officer may be ordered to submit to a polygraph test upon penalty of dismissal provided that there are reasonable grounds for demanding such a test, the answers are not used in any subsequent criminal prosecution, and the questions relate specifically and narrowly to the performance of the police officer's official duties. *Eshelman*, 560 P.2d at 1285-86; *see also Roux v. New Orleans Police Department*, 223 So. 2d 905, 912 (La. Ct. App. 1969) ("While appellant's refusal to obey the order is not evidence of guilt or of knowledge of the identity of the guilty party, he may not be permitted to refuse to take the polygraph test in view of his sworn duty to cooperate in the investigation of crime."), *cert. denied*, 397 U.S. 1008 (1970).

While numerous courts, including this court, have ruled that polygraph test results are inadmissible as evidence of guilt or innocence in criminal trials, *see State v. Ober*, 126 N.H. 471, 471-72 (1985), courts have found that the unreliability of polygraph test results for these purposes does not negate their utility for other purposes. In *City of Warrensville Heights v. Jennings*, 569 N.E.2d 489, 492 (Ohio 1991), for instance, the court observed that polygraph tests "can be a useful tool in internal department investigations of police misconduct." At issue in *Jennings* was whether a police dispatcher's refusal to obey an order to take a polygraph constituted "just cause" for his dismissal, thus, making him ineligible for unemployment insurance benefits. *Jennings*, 569 N.E.2d at 491. The court ruled that because polygraph test results are reliable enough for some purposes, there was just cause for the dispatcher's termination because he refused to take a polygraph after being ordered to do so. *Id.* at 492; *see also Fichera v. State Personnel Board*, 32 Cal. Rptr. 159, 164 (Ct. App.

1963) (observing in case involving investigation of officer misconduct, that a polygraph test "might have proved useful in limiting and channeling the investigation in this case"). *But see Farmer v. City of Fort Lauderdale*, 427 So. 2d 187, 190 (Fla.) ("[T]he possible investigative benefit of building a case upon the foundation of the results of a polygraph examination is too thin a reed to support a denial of a police officer's right to be subjected only to lawful and reasonable orders."), *cert. denied*, 464 U.S. 816 (1983); *Kaske v. City of Rockford*, 450 N.E.2d 314, 320 (Ill.) (recognizing that "a polygraph examination is . . . of some investigatory utility and value," but concluding that refusing to submit to polygraph test cannot be basis for disciplinary action against officer; to hold otherwise would be "inconsistent" with court's ruling that such test results are inadmissible in administrative hearings), *cert. denied*, 464 U.S. 960 (1983).

The Federal Employee Polygraph Protection Act of 1988, 29 U.S.C. §§ 2001-2009 (2000 & Supp. III), which prohibits many private sector employers from using polygraph tests for pre-employment screening or during the course of employment, also appears to recognize that the polygraph test may be useful for some purposes. This act contains a limited exemption for ongoing investigations provided certain conditions are met, as well as an exemption for private employers whose primary business consists of providing security. 29 U.S.C. § 2006(d), (e) (2000).

"Although the superior officer has broad powers to order a polygraph examination, his request or order must still be reasonable in the view of most courts." Nagle, *supra* at 68-69; *see Jennings*, 569 N.E.2d at 494 (request to take polygraph test must be for a lawful reason). In *Eshelman*, 560 P.2d at 1286, the court found that there were reasonable grounds to require the officer to submit to a polygraph where the officer's credibility was in question. As the court explained: "[A] polygraph is always proper to verify statements made by law enforcement officers during the course of a departmental investigation." *Id.*; *see Seattle Police Officers' Guild v. City of Seattle*, 494 P.2d 485, 493 (Wash. 1972) (holding that where serious charges of crime and corruption have been levied against department and public has serious doubts about department's integrity and morality, it was permissible to request officers to submit to polygraph tests upon pain of dismissal).

Courts that have ruled that police officers may not be terminated for failing to submit to a polygraph test have done so for reasons that do not apply here. In the case upon which the petitioner relies, *Stape v. Civil Service Commission of City of Philadelphia*, 172 A.2d 161, 164 (Penn. 1961), "nowhere in the City Charter, the City Ordinances, the Civil Service Regulations, or the Police Department regulations [was] there a provision which authorize[d] the Police Commissioner or the Civil Service

Commission, expressly or by implication, to force a city employee to submit to a polygraph test." There was also no regulatory authority to require the police officers at issue in *Molino v. Board of Public Safety of City of Torrington*, 225 A.2d 805, 809 (Conn. 1966), to take polygraph tests.

By contrast, section 26-E.5.1(B)(6) of the Division's professional conduct standards expressly states that "Division members may be compelled to provide specialized information or submit to testing or examinations," which may include polygraph tests. Pursuant to this provision, any such testing or examination "shall be specifically directed and narrowly related to the matter under investigation."

Further, under section 26-E.5.1(B)(4), (5), before any interview of a Division member may take place, a so-called "Garrity Warning" must be given. *See Garrity v. New Jersey*, 385 U.S. 493 (1967). Such a warning informs the accused that the purpose of questioning is to assist in determining whether to impose administrative discipline. Even if the accused were to disclose during questioning information indicating that he may be guilty of criminal conduct, the warning explains that neither his "self-incriminating statements, nor the fruits thereof" will be used against him in any criminal proceeding. The warning further states that if the accused refuses to answer questions or fails to give truthful answers, he will "be subject to disciplinary action, up to and including dismissal."

■ In light of the above discussion of the persuasive authority from other jurisdictions, we hold that an order made pursuant to the Division's professional conduct standards to require a Division member to take a polygraph test is a lawful order.

## II

We next address whether the order at issue was unlawful because it was impermissibly motivated by retaliation. The petitioner asserts that Colonel Sloper ordered her to take the polygraph test to retaliate against her for filing a sex discrimination complaint against the Division. She observes that before she was ordered to do so, it had been eight years since the Division had ordered a trooper to take a polygraph test. She further contends that the Division did not order her to take a polygraph test until it knew that she would refuse to take one.

■ The PAB found that Colonel Sloper was not motivated by retaliation when he ordered the petitioner to take the polygraph test. The PAB credited Colonel Sloper's testimony that his primary concern was whether the petitioner had made threats of physical violence against her superiors. As Colonel Sloper testified: "[I]t was clear to me that the only one that could ... really answer this truthfully was ... [the petitioner], and it was

clear to me that I had no other choice but to order her to submit to a polygraph and get these issues resolved." He explained that because Lamere did not work for the Division, he could not compel her to take a polygraph, but that he could compel the petitioner to do so. He also explained that, in his experience, it is generally not necessary to order an employee to take a polygraph because "usually there's an admission and one way or the other, it can be proved that they are being truthful or not. That wasn't the case here." Because there is evidence to support the PAB's finding, we uphold it. *See* RSA 541:13.

Having concluded that the order that the petitioner take the polygraph test was lawful, we affirm the PAB's determination that she engaged in willful insubordination.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.