**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0355, <u>Appeal of Derek Holston</u>, the court on February 22, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The appellant, Derek Holston (trooper), appeals a decision of the New Hampshire Personnel Appeals Board (PAB) upholding his five-day disciplinary suspension without pay by the New Hampshire Department of Safety – Division of State Police (NHSP). <u>See</u> RSA 21-I:58, II (2012); <u>N.H. Admin. Rules</u>, Per 1002.06(a)(2). He contends that the PAB erred by: (1) upholding the discipline imposed upon him by the NHSP "on grounds which were not raised during the underlying proceedings"; and (2) finding that he violated sections 1.2.C, 2.1.B.3, 2.2.A, 2.3.C.5, and 2.3.C.6 of chapter 41-GA of the NHSP's Professional Standards of Conduct, entitled "Pursuit Driving."

RSA chapter 541 governs our review of PAB decisions. <u>See</u> <u>Appeal of Waterman</u>, 154 N.H. 437, 439 (2006). Under RSA 541:13 (2007), we will not set aside the PAB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. The PAB's findings of fact are presumed <u>prima</u> <u>facie</u> lawful and reasonable. RSA 541:13. In reviewing the PAB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather, to determine whether the findings are supported by competent evidence in the record. <u>Appeal of Armaganian</u>, 147 N.H. 158, 168 (2001). We review the PAB's rulings on issues of law <u>de</u> <u>novo</u>. <u>Appeal of Murdock</u>, 156 N.H. 732, 735 (2008).

We first address the trooper's argument that the PAB violated his state and federal due process rights by upholding his suspension on the basis that he violated NHSP policies other than those that he was suspended for violating. He argues that the NHSP did not allege that he violated these sections and, as a result, he lacked notice. We first address the trooper's argument under the State Constitution and rely on federal law only to aid in our analysis. <u>State v. Ball</u>, 124 N.H. 226, 231-33 (1983).

Because the trooper had no protected property right in his job, the procedure the State chooses to afford him accords with the mandates of the Due Process Clause. <u>See</u> <u>Colburn v. Personnel Commission</u>, 118 N.H. 60, 64

(1978).  The trooper argues that the State's regulations required that he receive notice of the issues to be litigated.  The fundamental requisite of due process is the right to be heard at a meaningful time and in a meaningful manner. Appeal of Hiscoe, 147 N.H. 223, 227 (2001).  To that end, we have held that adequate notice is that which is reasonably calculated to give the parties actual notice of the issues to be decided at the hearing.  Id.

In this case, the PAB found that the trooper had violated five sections of the NHSP's policy governing pursuits:  1.2.C, 2.1.B.3, 2.2.A, 2.3.C.5, and 2.3.C.6.  The NHSP's written suspension notice stated that the trooper had violated, among other provisions, sections 2.2.A.7.a and 2.3.C.5 of the policy. Although the suspension notice did not state that he had violated section 1.2.C, it did state that he violated RSA 265:8 (2014), which is set forth verbatim in Section 1.2.C.  Thus, the written suspension notice informed the trooper that he was suspended for violating the same policy requirements that the PAB found he had violated, except for sections 2.1.B.3 and 2.3.C.6.

We conclude that section 2.1.B.3 is integrally related to the other provisions identified in the suspension notice.  Section 2.1.B.3 identifies factors that a trooper must consider when assessing the "[d]egree of risk created by [a] pursuit," including the "[v]olume, type, speed and direction of vehicle traffic," the "[n]ature of the area," including whether it is a school zone, and the "population density."  The suspension notice provided ample notice that the trooper was suspended as a result of his decision not to terminate his pursuit of a suspected stolen vehicle.

Furthermore, section 2.2.A.7.a requires a trooper in pursuit of a felon to give "serious consideration" to "the need to apprehend and the duty to protect life."  Such consideration would necessarily include an assessment of the degree of risk created by the pursuit, which would require consideration of the factors listed in section 2.1.B.3.  Similarly, we conclude that sections 2.3.C.5 and 2.3.C.6 are integrally related because they both address information to be communicated during a pursuit.

Accordingly, we conclude that the trooper had sufficient notice that the PAB would review his decision not to terminate his pursuit and would look to the NHSP policy on pursuit driving, including the factors in section 2.1.B.3, which he should have considered in making that decision, and the factors in section 2.3.C.6, which identified the information he should have communicated during the pursuit.

We conclude that the PAB did not violate the trooper's state due process right.  The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances.  See Petition of Kilton, 156 N.H. 632, 646 (2007).  Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

2

We next address the trooper's arguments regarding the PAB's findings that he violated specific sections of the NHSP's policy on pursuit driving. He contends, first, that "it is impossible to conclude that [he] violated a general admonition against unsafe driving [contained in section 1.2.C], while simultaneously finding that he did not violate . . . any specific guidelines governing operation of a motor vehicle during a vehicle pursuit." Section 1.2.C states that a trooper conducting a pursuit must "drive with due regard for the safety of all persons" and is not protected from "the consequences of his reckless disregard for the safety of others." The PAB found that the trooper was "traveling at a high rate of speed in a residential zone and through a school zone and in a dangerous manner that posed a risk of injury to him as well as to others," that he "engaged in conduct that posed a risk of harm to [himself] as well as to the public when [he] travelled in the breakdown lane, then on the sidewalk, then on the other side of the yellow line with oncoming traffic," and that he "operated his cruiser in an unsafe manner." These findings were supported by the trooper's testimony and by the video from his dashboard camera, which we have viewed. Although the PAB did not find that the trooper violated section 2.4, which imposes absolute restrictions on vehicle pursuits, based upon these findings, we conclude that the PAB's decision that the trooper violated section 1.2.C was not unjust or unreasonable.

Second, the trooper argues that the PAB's finding that he violated sections 2.1.B.3 and 2.2.A is unreasonable because he "did consider, multiple times, the circumstances of the pursuit and whether it should proceed." Section 2.1.B.3 identifies factors that a trooper should consider when determining the "[d]egree of risk created by pursuit." Section 2.2.A.7.a requires a trooper conducting a pursuit of a felon that "will take the vehicles into a downtown area or through an elementary school zone during school hours" to give "serious consideration" to "the need to apprehend and the duty to protect life." Although the trooper testified that he considered terminating the pursuit, the PAB was not required to credit that testimony. See Armaganian, 147 N.H. at 163 (stating PAB not required to believe even uncontroverted evidence). We conclude that the PAB could have reasonably inferred from all the circumstances, including its view of the video, that the trooper did not seriously consider terminating the pursuit.

Finally, the trooper argues that the PAB's finding that he violated sections 2.3.C.5 and 2.3.C.6 is unreasonable because "[w]ith the exception of the speed of the pursued vehicle . . . [he] communicated all other information he was required to convey." Section 2.3.C.5 requires a trooper engaged in a pursuit to "provide as much information as is known" regarding the pursued vehicle's speed. The trooper testified before the PAB that he did not provide this information.

3

Section 2.3.C.6 requires a trooper to communicate "[a]ny and all other information deemed appropriate by the [trooper in pursuit] to assist other units." We conclude that the PAB could reasonably determine that the pursued vehicle's speed was information vital to other units coming to the trooper's assistance.

Accordingly, we conclude that the PAB's decision affirming the NHSP's disciplinary suspension of the trooper was not unjust or unreasonable or legally erroneous.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**