Strafford
No. 2010-737

DAVID FISCHER

v.

SUPERINTENDENT, STRAFFORD COUNTY HOUSE OF CORRECTIONS

Argued: February 9, 2012
Opinion Issued: April 20, 2012

David Fischer, by brief, *pro se*, and *Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the petitioner.

*Soldati Law Offices, P.A.*, of Portsmouth (*Lincoln T. Soldati* on the brief and orally), for the respondent.

HICKS, J. The petitioner, David Fischer, appeals orders of the Superior Court (*Brown* and *Wageling*, JJ.) on his motions for pretrial bail, claiming that the court delegated authority to Strafford County Community Corrections (SCCC), which is managed by the respondent, Superintendent, Strafford County House of Corrections, and part of the executive branch, in violation of the separation of powers doctrine. We affirm.

The following facts are either undisputed or supported in the record. On February 19, 2010, the petitioner was arrested on charges of second degree assault, a class B felony, *see* RSA 631:2 (Supp. 2011), and six related misdemeanors. Bail was set by the Dover District Court (*Cappiello*, J.) at $75,000 cash, subject to certain conditions, including, if the petitioner posted bail, supervision by SCCC with a sobrietor, GPS monitoring, and a mental health referral. Bail was continued by the Court (*Weaver*, J.) on March 5, 2010.

The petitioner filed a motion in superior court for an amendment of bail, arguing that $75,000 cash bail was excessive and that he was entitled to personal recognizance (PR) bail, pursuant to RSA 597:2 (Supp. 2011). He proposed that he would reside with his mother in Rochester.

Following a hearing on May 3, the Court (*Brown*, J.) ordered that bail would "remain as is" at $75,000 cash with the stated conditions, and scheduled a further hearing. Judge Brown issued an amended order on May 6, lowering the cash bail to $50,000 and setting conditions, if bail was posted, including that the petitioner: (1) "live at: his mother's house on house arrest to leave for mental health counseling only"; (2) refrain from using drugs and alcohol and "[s]ubmit to random drug [and] alcohol tests"; and (3) be "supervised [and] electronically monitored by SCCC [with] GPS, Sobrietor [and] Mental Health Refera[l]."

On June 1, Judge Brown again ruled that bail would remain as is and ordered a further hearing at a time the defendant's therapist would be available to testify. At that subsequent hearing, on June 15, Judge Brown ruled as follows from the bench:

> What we're going to do, Mr. Fischer, is that it's going to stay at 50,000 cash to convert to personal recognizance upon verification of residence, which I don't think is going to be a problem because it's your mother's residence, and confirmation of an existing and ongoing mental health and medical appointments.
>
> So you'll be released on a GPS[,] Sobrietor, administrative home confinement, basically house arrest. You'll be able to leave the residence for mental health, medical, consult with counsel, and meeting with [SCCC]. But other than those — unless counsel sees

any other exceptions, I'll listen to that, but those are the only exceptions, and no contact with the victim.

The written order of same date stated that bail was set at $50,000 cash "[t]o convert to PR if found accep[table] by SCCC — Whether Bail is Posted or Converted all conditions apply." (Capitalization omitted.) Those conditions included supervision by SCCC "upon verification of address," refraining from drugs and alcohol, and submission to random drug and alcohol testing.

For reasons the parties disputed, but which are unnecessary to recount here, placement of the petitioner with his mother became infeasible. The petitioner moved to amend his bail conditions, proposing to live at a certain residence in Massachusetts. The State objected and the motion was denied without a hearing on July 7, 2010. On August 25, the petitioner moved for a bail hearing, this time proposing to reside in Rochester. The State again objected and the matter was heard by Judge Wageling on September 1.

At the hearing, the petitioner alleged that SCCC was being unreasonable in repeatedly finding his proposed residences inappropriate. His counsel argued that SCCC "doesn't have the authority to decide bail conditions, and this Court can order that he be monitored by [SCCC] with the conditions set by Judge Brown." Judge Wageling denied the motion, stating, in part, that she would intervene if SCCC were shown to be violating its own policies. She stated further, "Otherwise, I'm going to leave it to [SCCC's] discretion to apply their rules. It's the separation of powers doctrine, as far as I'm concerned."

At least one additional pre-trial motion by the petitioner to amend bail was denied, and, although the record does not indicate the entire disposition at trial, it appears that the petitioner was convicted on at least one felony charge. A post-verdict bail hearing was held before Judge Brown on December 9, 2010. The court declined to modify bail, stating from the bench:

> I am not going to exercise my discretion and order [SCCC] to do anything. I have a bail order that's been in place since June 15th, 2010, and that remains in place as is.
>
> I'm just not going to order [SCCC] to do something it is not inclined to do. I have the power, and I have the discretion to do that, but I'm not going to in this case. The bail remains as is.

This appeal followed. We accepted a single question for review: "Whether the court's delegation to SCCC of the ultimate authority to determine whether the petitioner is released on personal recognizance bail is an unconstitutional delegation of judicial authority."

As a preliminary matter, the petitioner asks us to rule that the issue he presents is not moot for two reasons. First, because Judge Brown considered the pre-trial bail order still in effect post-conviction, resolution of the issue "could affect whether [the petitioner] obtains release on bail pending appeal." Second, he contends that the question of SCCC's power to determine conditions of release on bail is likely to recur, but evade appellate review given that SCCC may not reach a decision about pre-trial detention in any particular case "until shortly before trial, at which point the value to the defendant of pre-trial release has been almost entirely lost."

■ "[T]he question of mootness is not subject to rigid rules, but is regarded as one of convenience and discretion." *Batchelder v. Town of Plymouth Zoning Bd. of Adjustment*, 160 N.H. 253, 255-56 (2010) (quotation omitted). Because this case presents an issue "capable of repetition, yet evading review," *State v. Gagne*, 129 N.H. 93, 98 (1986) (quotation omitted), we conclude that it is not moot and will decide it on the merits.

■ The petitioner argues that the trial court's delegation to SCCC of the authority to determine whether to release him on personal recognizance bail violated the principle of separation of powers. The separation of powers doctrine is embodied in Part I, Article 37 of our State Constitution, which provides:

> In the government of this state, the three essential powers thereof, to wit, the legislative, executive, and judicial, ought to be kept as separate from, and independent of, each other, as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the constitution in one indissoluble bond of union and amity.

"Separation of powers is an integral part of our governmental system of checks and balances: each branch of government acts as a check on the other, protecting the sovereignty and freedom of those governed by preventing the tyranny of any one branch of the government being supreme." *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. 562, 568 (1997). Thus, under the Separation of Powers Clause, "each branch is prohibited . . . from encroaching upon the powers and functions of another branch." *Duquette v. Warden, N.H. State Prison*, 154 N.H. 737, 746-47 (2007). Nevertheless, Part I, Article 37 does "not provide for impenetrable barriers between the branches . . . and the doctrine is violated only when one branch usurps an *essential* power of another." *Id.* at 747 (citation omitted). In addition, "we have always recognized that the doctrine does not require an absolute division of powers, but a cooperative accommodation among the three branches of government." *Opinion of the*

*Justices (Prior Sexual Assault Evidence)*, 141 N.H. at 569. "In the connection between the departments some overlapping is permissible, and there is a region of authority, alternative and concurrent, the boundaries of which are fixed by no final rule." *Opinion of the Justices*, 87 N.H. 492, 493 (1935).

The petitioner's argument rests upon the premise that "[t]he power to determine the conditions on a defendant's right to pre-trial release belongs to the judiciary." He recognizes that some overlapping of authority is permissible, conceding that "the legislative branch has a role in defining the general conditions in which bail is available, and . . . the executive branch has a role in supervising persons released on bail," but maintains that "the courts have the power in individual cases to set the terms of bail." He asserts, therefore, that while SCCC may make recommendations to the court regarding bail conditions, it cannot exercise the power to set bail conditions, either ultimately, or even in the first instance subject to review by a court. He concludes that, "because the superior court . . . effectively cede[d] to SCCC the power to decide whether [his] cash bail would convert to PR bail, this Court must find a violation of the principle of the separation of powers."

The respondent does not challenge the petitioner's premise, but rather disputes that the court delegated any authority to SCCC. He argues that the petitioner "has taken a few words in the Court's bail order out of context in an attempt to manufacture a constitutional issue of separation of powers." He asserts that "[n]either the express statements of the Court's intent as stated in the bail hearings nor the actual manner in which the SCCC[] [program] operates support finding a violation of the separation of powers doctrine."

Our first task, then, is to determine the import of the court's orders.

> The interpretation of a court order is a question of law, which we review *de novo*. In construing a court order, we look to the plain meaning of the words used in the document. We construe subsidiary clauses so as not to conflict with the primary purpose of the trial court's decree. As a general matter, a court decree or judgment is to be construed with reference to the issues it was meant to decide.

*Appeal of Langenfeld*, 160 N.H. 85, 89 (2010) (citations omitted). Our task is complicated by the number of times the issue of bail came before the court. The petitioner himself states that "the court, the State, and SCCC described SCCC's role in different ways at different times." The actual bail order, however, that remained in place from June 15, 2010, through the

court's last hearing on the matter on December 9, 2010, set bail at $50,000 cash with conditions, "to convert to PR if found accep[table] by SCCC." (Capitalization omitted.) The issue is therefore whether the phrase "if found acceptable by SCCC" ceded to SCCC any authority that violates the separation of powers doctrine.

To support its contention that the court in effect ceded to SCCC the authority to determine conditions of release, the petitioner argues that the court apparently believed that SCCC possessed that power in any event. The petitioner argues that "the court, at times, indicated that principles of separation of powers might preclude the court from overriding SCCC's intentions as to the conditions of release." The petitioner cites, for instance, a portion of the record in which the court stated:

> [The bail order] says that [the petitioner's] bail is going to be set at $50,000 cash only subject to the conditions listed below, to convert to PR if found acceptable by [SCCC].
>
> Now, similarly to the separation of power that exists with regard to jails, I can't order a jailer to release a defendant on good time credit. It's thoroughly at the discretion of the jailer whether or not someone is going to get good time credit, for all intents and purposes.

We do not read this statement to mean that the court believed it lacked the authority to order SCCC supervision on PR bail, but rather that it lacked the authority to dictate how SCCC exercised discretion over a matter legitimately within its discretion.

■ We note that the phrase "if found accep[table] by SCCC" is followed by the language "[w]hether Bail is Posted or Converted all conditions apply." (Capitalization omitted.) As the court pointed out at the September 1 hearing, "the bail order very clearly has an either or. Now, if [the petitioner] wishes to post $50,000 cash, the Court order says that [SCCC] will supervise him." The court later explained:

> He's going to be monitored by [SCCC] anyhow. It's simply that the difference is that what the Court is doing is ordering [SCCC] to do it. He's being given, if you will, a gift, that is, his bail is going to change from $50,000 cash to PR, if they find him acceptable.
>
> . . . .
>
> If he posts the 50 grand, he gets out, and the Court's order then is that he's going to be supervised by [SCCC]. They are then ordering [SCCC] to do it.

The foregoing makes clear that the court knew it had the power to order supervision by SCCC. We consider any language in the court's orders that could be read to the contrary to be inadvertent and not indicative of the court's actual opinion on the matter, or of a delegation of any authority by the court to SCCC.

The petitioner concedes, as noted previously, that "it would not violate the Constitution for SCCC to make recommendations as to bail conditions," but contends that the power delegated to SCCC in this case went beyond recommendation into impermissible decision-making on a condition of bail. We disagree. Admittedly, the court's June 15 order contemplated some exercise of discretion by SCCC. The court noted that SCCC "ha[d] to decide whether or not [it] has the means to [supervise the petitioner in the community] based upon whatever the current circumstances are." Such a decision, however, is well within SCCC's purview and invades no province of the judiciary. If SCCC decided it had the means to adequately supervise the petitioner, under the residential options he proposed, then bail was set — by the court — at personal recognizance. On the other hand, if SCCC lacked confidence in its ability to supervise the petitioner, the court ordered supervision anyway but imposed an additional condition to ensure the petitioner's appearance and good behavior pending trial — namely, the posting of $50,000 cash bail. We see little functional difference between SCCC determining that it could not adequately supervise the petitioner in the residential placements he proposed and SCCC recommending against pretrial release. That the court decided the alternative consequences of SCCC's decision prior to SCCC making it does not make the ultimate decision any less the court's.

In sum, we conclude that the bail orders at issue here reflect "a cooperative accommodation among" the judicial and executive branches and do not violate the separation of powers doctrine. *Opinion of the Justices (Prior Sexual Assault Evidence)*, 141 N.H. at 569.

*Affirmed.*

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.