NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Public Employee Labor Relations Board
No. 2014-312


APPEAL OF NEW HAMPSHIRE RETIREMENT SYSTEM
(New Hampshire Public Employee Labor Relations Board)

Argued: March 31, 2015
Opinion Issued: May 22, 2015


Sulloway & Hollis, PLLC, of Concord (Edward M. Kaplan and Katherine DeForest on the brief, and Mr. Kaplan orally), for the petitioner.


Milner & Krupski, PLLC, of Concord (Glenn R. Milner on the brief and orally), for the respondent.


LYNN, J. The petitioner, the New Hampshire Retirement System (NHRS), appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB) denying the NHRS's petition to modify the composition of the respondent, Local 1984, a bargaining unit represented by the State Employees' Association (SEA), to exclude from the unit certain supervisory positions. See N.H. Admin. Rules, Pub 302.05(a). We reverse and remand.

I

The following facts were found by the PELRB or are otherwise not in dispute. The NHRS is a public employer within the meaning of RSA 273-A:1, IX (Supp. 2014). On September 13, 1978, the PELRB certified the SEA as the

exclusive representative of a bargaining unit composed of certain of the NHRS's "[c]lassified state employees." Between 2004 and 2010, and without objection from the NHRS, the PELRB issued three orders modifying the bargaining unit at the SEA's request. In 2004, the unit description was modified to read as follows: "Employees of the NH Retirement System, with the exception of those employees excluded from the [applicable statutory] definition of public employee . . . ." In 2009 and 2010, while the general unit description remained unchanged from 2004, it was specifically modified to exclude certain enumerated positions, none of which are relevant to this appeal. Subsequent to these modifications, on December 7, 2011, the NHRS and the SEA entered into a collective bargaining agreement with effective dates from July 1, 2011, through June 30, 2013.

George Lagos became the executive director of the NHRS in February 2012. Upon assuming his new position, Lagos reviewed NHRS's procedures, methodology, written policies, and some job descriptions, and met with the Trustees and management team, all with the goal of developing a new business plan. Based upon his review, Lagos concluded that the NHRS lacked an effective management structure because the management team itself lacked responsibility, accountability, and authority. Specifically, he was concerned that managerial employees did not have a proper sense of the scope of their authority and responsibilities. Lagos instituted changes to improve the management structure of the NHRS, including the training of managerial employees, and developed a three-year business plan that involved, among other things, instituting performance evaluations.

Rosamond Cain was hired as the NHRS's Human Resources Manager in August 2012. Under the direction of Lagos, she helped to address concerns that certain NHRS employees did not perform their assigned responsibilities and needed assistance in managing their teams. As a member of the new management team, Cain participated in the creation of a three-part training program for management that focused upon evaluations, employee expectations, and job performance. She also amended job descriptions and conducted training sessions on performance appraisals and supervisor accountability.

The following NHRS positions, all members of the bargaining unit as currently constituted, were affected by the new management team's training efforts and are the subject of this appeal[1]: Retiree Services Team Lead,

---

[1] In addition to denying the petition for modification with respect to the positions identified in the text, the PELRB also refused to exclude the positions of Process Improvement Manager and Project Manager from the bargaining unit. The NHRS does not challenge the PELRB's decision with respect to these positions. The PELRB also granted the petition for modification insofar as it requested that the newly created position of Regulatory Compliance Officer/Staff Attorney be excluded from the bargaining unit, and the SEA has not filed a cross-appeal challenging that decision.

Employer Auditing Team Lead, Employer Reporting Team Lead, Member Accounts Team Lead (collectively "Team Leads"), Public Information Officer, and Controller. The Employer Auditing, Employer Reporting, and Member Accounts Team Lead positions were established on various dates in 2008; the record does not indicate when the Retiree Services Team Lead position was established. The Public Information Officer position was established in 1988, and the Controller position was established in October 2011. The job descriptions for all of these positions contain the following language:

> Carries out supervisory responsibilities in accordance with the organization's policies and applicable laws. Responsibilities include interviewing, hiring and training employees; planning, assigning and directing work; appraising performance; rewarding and disciplining employees; addressing complaints and resolving problems.
>
> . . .
>
> Actively participates in NHRS' Management Team, including development and implementation of strategic planning initiatives, collaborative problem-solving and various project initiatives.

Prior to the new management team's efforts, these positions, as indicated by the job description, were responsible for managing other bargaining unit employees, but were not actually performing these responsibilities.

Cain testified that, under the new management regime, the Team Leads, Public Information Officer, and Controller now all have similar supervisory responsibilities, including assigning work, imposing discipline, and conducting performance evaluations of other employees who are members of the bargaining unit. The performance evaluations are reviewed by the human resources department and by Lagos, after which each employee's evaluation is placed in his or her personnel file. The evaluations may affect the employee's opportunities for promotion, lead to placement on an improvement plan, or result in discharge. The NHRS did not submit any completed performance evaluations to the PELRB hearing officer. Cain also testified that these positions now issue disciplinary letters and written warnings which, like the performance evaluations, are placed in the employee's personnel file. The NHRS submitted to the hearing officer three written warnings, as well as two letters summarizing conversations with employees regarding attire and behavioral concerns.

On April 8, 2013, the NHRS filed the subject modification petition with the PELRB. See N.H. Admin. Rules, Pub 302.05(a). In it, the NHRS sought to exclude from the bargaining unit the Team Lead, Public Information Officer,

and Controller positions on the grounds that circumstances had changed and that the positions were now supervisory within the meaning of RSA 273-A:8, II (Supp. 2014). The SEA objected to the petition to modify, arguing that the circumstances regarding those positions had not changed to a degree warranting modification of the bargaining unit and that the positions were not otherwise improperly included within the unit.

Following an evidentiary hearing, a PELRB hearing officer denied the petition to modify the bargaining unit. With regard to the Team Leads and Public Information Officer — positions which had been created prior to the March 2010 modification of the bargaining unit[2] — the hearing officer found that the "hiring of new management and the implementation of new managerial strategic plan are not material changes in circumstances warranting modification of an existing bargaining unit." Regarding the Controller position, which was created after the March 2010 modification, the hearing officer acknowledged that the creation of a new position could warrant a modification of an existing bargaining unit, but denied exclusion of this position from the unit on the ground that there was insufficient evidence "to establish that the Controller 'exercises supervisory authority involving the significant exercise of discretion.'"

The PELRB reviewed and approved the hearing officer's decision, see N.H. Admin. Rules, Pub 205.01, and subsequently denied NHRS's motion for rehearing, see N.H. Admin. Rules, Pub 205.01(d), 205.02(a); RSA 541:3 (2007). This appeal followed.

On appeal, the NHRS argues, among other things, that the PELRB erred by failing to exclude certain supervisory employees from the unit, as the change in status of those positions from "supervisory-in-name-only to supervisory-in-fact is a change sufficient to require modification of the bargaining unit" pursuant to New Hampshire Administrative Rules, Pub 302.05(a). It specifically argues that modification of the bargaining unit under the changed circumstances is mandated by RSA 273-A:8, II, which prohibits supervisors and the employees they supervise from belonging to the same bargaining unit. We agree that the change in the contested positions to "supervisors-in-fact" constituted a material change in circumstances warranting modification of the unit.

---

[2] In her decision, the hearing officer stated that these positions "appear[ed]" to have been created prior to the March 2010 bargaining unit modification. Since neither party contends that the hearing officer's statement is inaccurate, we assume that the Team Lead and Public Information Officer positions were in fact included in the bargaining unit prior to the modification of the unit approved by the PELRB in March 2010.

4

## II

RSA chapter 541 governs our review of PELRB decisions.  See RSA 273-A:14 (2010); RSA 541:2 (2007).  "Under RSA 541:13 (2007), we will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable."  Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014).  The PELRB's findings of fact are presumed prima facie lawful and reasonable.  RSA 541:13.  "In reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record."  Appeal of Hillsborough, 166 N.H. at 733.  "We review the PELRB's rulings on issues of law de novo."  Id.

New Hampshire Administrative Rules, Pub 302.05(a) provides, in relevant part:

> Where the circumstances surrounding the formation of an existing bargaining unit are alleged to have changed, or where a prior unit recognized under the provisions of RSA 273-A:1 is alleged to be incorrect to the degree of warranting modification in the composition of the bargaining unit, the public employer, or the exclusive representative . . . may file a petition for modification of bargaining unit.

The NHRS argues that there has been a change in circumstances surrounding the formation of the unit; namely, that the Team Lead, Public Information Officer, and Controller positions, which were previously only "supervisors-in-name," are now supervisors-in-fact.  The NHRS further argues that the change is material and thus warrants modification, as it would "result in a statutory violation with respect to the composition of the bargaining unit."  Cf. Appeal of City of Laconia, 147 N.H. 495, 497 (2002) (whether a change is material is part of the modification analysis); RSA 273-A:8, II.  In response, the SEA first argues that the issue of whether there has been a material change in the contested positions is a mixed question of law and fact and, because the NHRS failed to provide a transcript of the evidentiary hearing before the PELRB, we should decline review.  The SEA also contends that the NHRS's argument fails because it confuses the PELRB "findings" with mere recitations of testimony.  Finally, the SEA argues that there was no material change in circumstance.

As a preliminary matter, we first address the SEA's assertion that the NHRS cannot prevail on appeal because it did not provide a transcript of the evidentiary hearing, which is needed to address what it contends is a mixed question of law and fact.  The SEA essentially asserts that, absent a transcript, the NHRS has no factual basis upon which to rely for its modification argument because the recitations contained in the "Findings of Fact" section of the

hearing officer's order, upon which the NHRS relies, do not actually constitute factual findings. Instead, the SEA claims that these statements are merely inconclusive recitations of witness testimony that the hearing officer was free to accept or reject, even if uncontroverted. See Appeal of Armaganian, 147 N.H. 158, 163 (2001) (stating that the New Hampshire Personnel Appeals Board was not required to believe even uncontroverted witness testimony). We disagree.

The SEA accurately states the general principle of law, but it misses the mark in applying the principle to the record before us. Although the hearing officer did phrase some of her factual recitations in terms of what certain witnesses said or what certain documents showed, rather than in terms of what she found to be true, there is no indication that her ultimate decision regarding modification of the bargaining unit hinged on credibility determinations or that there was any question as to the accuracy of the facts about which evidence was presented. Rather, the dispute between the parties turns upon the legal implications of those facts with respect to the issue of whether a modification of the bargaining unit was warranted. Thus, the most sensible construction of the hearing officer's order is not that she rejected some or all of the evidence presented, but that she found that evidence legally "insufficient" to support the relief that the NHRS requested. See Fischer v. Superintendent, Strafford County House of Corrections, 163 N.H. 515, 519 (2012) (interpretation of court order is subject to de novo review). Because a transcript is not required for us to review this purely legal issue, we are free to consider the NHRS's arguments. Tiberghein v. B.R. Jones Roofing Co., 151 N.H. 391, 394 (2004).

We agree with the NHRS that a change that would result in a bargaining unit violating RSA 273-A:8, II constitutes a material change in circumstances warranting modification. Thus, we must examine the language of that statute. Although the PELRB's determination will not be overturned unless it is erroneous as a matter of law, or unjust or unreasonable, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Appeal of Town of Moultonborough, 164 N.H. 257, 264 (2012). RSA 273-A:8, II states, in pertinent part, that "[p]ersons exercising supervisory authority involving the significant exercise of discretion may not belong to the same bargaining unit as the employees they supervise." To determine whether the Team Lead, Public Information Officer, and Controller positions exercise supervisory authority involving the significant exercise of discretion, we consider several factors: their authority to evaluate other employees; the nature of their supervisory role; and their disciplinary authority. Id. at 266.

We first consider the Team Lead, Public Information Officer, and Controller positions' authority to evaluate other employees within the bargaining unit. Under the job descriptions, these positions are responsible for "appraising performance," and, under the new management team, now actually

do evaluate other employees in the bargaining unit. These evaluations are placed in the employee's personnel file, and can affect the employee's opportunities for promotion, can lead to placement on an improvement plan, or can lead to termination.

We focused upon similar facts in Appeal of University System of New Hampshire, 131 N.H. 368, 376 (1988). In reversing the PELRB's decision that captains were not supervisors, we relied in part upon the fact that captains, like the contested positions here, had the authority to evaluate subordinate employees within the same bargaining unit. University System, 131 N.H. at 376. Likewise, in Appeal of Town of Moultonborough, we found that sergeants and captains were supervisors, and reversed the PELRB's decision to the contrary, because those positions also had the authority to evaluate subordinate employees in the same bargaining unit. Moultonborough, 164 N.H. at 267. As is the case here, the evaluations conducted by the contested positions in University System and Moultonborough affected subordinate employees. In University System, 131 N.H. at 266, the evaluations were given weight in merit pay increase decisions and led to a new employee being discharged for not progressing in a satisfactory manner; in Moultonborough, 164 N.H. at 267, the evaluations were placed in the employee's personnel file and were considered in determining step raises. Thus, based upon the facts before the PELRB, we conclude that the contested positions' authority to evaluate other bargaining unit members shows that these positions exercise supervisory authority involving the significant exercise of discretion.

The SEA emphasizes that the NHRS did not submit any completed performance evaluations to the PELRB. However, given that the new management regime was of recent vintage at the time of the hearing, and that bargaining unit members evaluating other bargaining unit members is inherently problematic, the absence of completed evaluations is of little significance. As we have stated, the fact that an employee "has such [supervisory] authority, regardless of whether he presently exercises it, is sufficient to vest him with supervisory authority under the statute." Appeal of Town of Stratham, 144 N.H. 429, 432 (1999). Further, "[i]t is not necessary for us to sit by and 'allow events to unfold to the extent that the disruption of the [NHRS] and the destruction of working relationships is manifest before taking action.'" University System, 131 N.H. at 376-77 (quotation omitted).

We next consider the nature of the supervisory role for the contested positions. Based upon the job description language, each position is responsible for: "interviewing, hiring and training employees"; "planning, assigning and directing work"; "rewarding" employees; and "addressing complaints and resolving problems." Like the employees here, the employees in the contested positions in Moultonborough assigned work, developed department rules, and were involved in various aspects of the hiring process, and the captains in University System likewise assigned work to subordinate

7

officers. <u>Moultonborough</u>, 164 N.H. at 266; <u>University System</u>, 131 N.H. at 376. Consistent with these decisions, we conclude that the nature of the supervisory role for the contested positions was substantial vis-a-vis other bargaining unit members, and, thus, shows that these positions exercise supervisory authority involving the significant exercise of discretion.

Finally, we consider the disciplinary authority of the Team Lead, Public Information Officer, and Controller positions. The PELRB found that each position has the authority to issue disciplinary letters and written warnings, which are placed in the employee's personnel file. This is again similar to <u>Moultonborough</u> and <u>University System</u>, in which the contested positions were authorized to issue warnings to other bargaining unit employees. <u>Moultonborough</u>, 164 N.H. at 267; <u>University System</u>, 131 N.H. at 376. Further, the Team Lead, Public Information Officer, and Controller positions are all responsible for "addressing complaints and resolving problems" with employees that, together with their ability to issue disciplinary letters, indicates widespread disciplinary authority. The NHRS submitted three written warnings, as well as two letters summarizing attire and behavioral concerns, to the PELRB. Again, this evidence demonstrates that the contested positions' authority involves the significant exercise of discretion over other bargaining unit members.

In sum, in light of all the facts found by the PELRB, we conclude that the Team Leads, Public Information Officer, and Controller are supervisors under RSA 273-A:8, II. Thus, contrary to the hearing officer's determination, we conclude that "the hiring of new management and the implementation of [a] new managerial strategic plan," in which the contested positions became supervisors-in-fact, constituted a material change in circumstances that mandated the modification of the bargaining unit in order to prevent a violation of the statute. Accordingly, we hold that the PELRB's decision not to exclude the Team Lead, Public Information Officer, and Controller positions from the bargaining unit was erroneous as a matter of law. We reverse the order of the PELRB and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.