# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0557, <u>James Alger & a. v. Town of Goffstown & a.</u>, the court on May 13, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The petitioners, James Alger and Lois Alger (abutters), appeal an order of the Superior Court (<u>Nicolosi</u>, J.) affirming a decision of the zoning board of adjustment (ZBA) for defendant Town of Goffstown (town). The ZBA approved an administrative determination by the town's code enforcement officer (CEO) that defendant St. Anselm College (college) installed its stadium lighting in compliance with a conditional use permit issued by the town's planning board (board), and that the board had not imposed any "additional conditions of approval for the project." <u>See</u> RSA 674:33, I(a) (2008); RSA 677:4 (Supp. 2015). The abutters contend that the trial court's order upholding the ZBA is both factually and legally erroneous. We assume, without deciding, that the abutters' arguments are preserved.

Judicial review in zoning cases is limited. <u>Merriam Farm, Inc v. Town of Surry</u>, 168 N.H. 197, 199 (2015). The burden of proof is on the party seeking to set aside any order by a ZBA, the factual findings of which are deemed <u>prima facie</u> lawful and reasonable. RSA 677:6 (2008). The ZBA's decision will not be set aside by the superior court, absent errors of law, unless it is persuaded by the balance of probabilities, on the evidence before it, that the ZBA's decision is unlawful or unreasonable. RSA 677:6; <u>Merriam Farm</u>, 168 N.H. at 199. We, in turn, will uphold the superior court's decision unless the evidence does not support it or it is legally erroneous. <u>Merriam Farm</u>, 168 N.H. at 199.

To the extent that the abutters argue that it is "not clear that the typical deference is appropriate in this particular case," we disagree. <u>See</u> RSA 677:6. To the extent that they argue that the board was the correct forum to address the CEO's determination, this is contrary to statute, <u>see</u> RSA 674:33, I(a), and was finally decided by a previous trial court order, which they did not appeal. <u>See</u> <u>Super. Ct. Civ. R.</u> 46(b).

The abutters argue that the CEO, the ZBA, and the trial court all "confused the nature of [the abutters'] claim." The abutters claim that: (1) the college made representations to the board that a "large, thickly wooded area" that would buffer the effect of the lights upon surrounding properties existed between the proposed

lights and the abutters' house; and (2) "representations made by an applicant in obtaining an approval are binding on the applicant, even if the relevant land use board does not reduce any representations to express restrictions." They concede that, regardless of whether the ZBA and the trial court framed the question correctly, both addressed whether the college made representations regarding the function of the vegetative area as a buffer between the lights and the abutters' property.

The scope of a variance is dependent upon the applicant's representations to the ZBA and the intent of the language in the variance at the time it is issued, and is a question of fact for the ZBA. 1808 Corp. v. Town of New Ipswich, 161 N.H. 772, 775 (2011) (stating representation in submitted plans was implied limitation on scope of variance); Rye v. Ciborowski, 111 N.H. 77, 81 (1971) (concluding variance restricted by representations made in application); cf. Bio Energy v. Town of Hopkinton, 153 N.H. 145, 155 (2005) (declining to find implied condition when applicant for variance did not represent that it would burn only "pure" woodchips). The parties do not contend that a different standard should apply to a conditional use permit. The town's zoning ordinance also provides that "[r]epresentations made at a public hearing or in material submitted to the [board] by an applicant in order to obtain a Conditional Use Permit shall be deemed to be conditions of the issuance of the permit."

In this case, we conclude that there was evidence before the trial court from which it could have reasonably found that, based upon the balance of probabilities, the ZBA's decision that the CEO's determination that the college's permit did not contain any implied conditions was lawful and reasonable. See RSA 677:6; Merriam Farm, 168 N.H. at 199. The abutters argue that the CEO "did not determine that there was no implied condition, but rather attempted to circumvent or ignore the issue of the implied condition." On the contrary, the CEO's final determination letter stated that the college complied with the approved plan and that the board "made no additional conditions of approval for the project." We understand this statement to refer to both express and implied conditions. Cf. Fischer v. Superintendent, Strafford County House of Corrections, 163 N.H. 515, 519 (2012) (stating interpretation of court order is question of law that we review de novo).

The abutters argue that the CEO's final determination contradicts his prior statements, made more than two months earlier and to the college, that: (1) he believed that the board "acted on incorrect information regarding the tree buffer that exists between" the lighting and the abutters' property because "older aerial photographs were used to evaluate the buffer"; and (2) the aerial photograph "showed a very lush green buffer zone . . . which led the [board] to believe that there would be no impacts to the residents." However, the CEO's determination letter stated that he had investigated the matter and subsequently concluded that the lights were in conformance with the approved plan and the town's ordinance.

2

The abutters contend that, before the board, "the College argued that there would be no impact on surrounding properties, in part, because of a large, thickly wooded area to the east of [the lighting] which it showed to the [board] by means of an undated aerial photograph." However, the board's minutes contain only two references to the vegetation between the college and the abutters' property, both of which were in the context of whether the lighting would have regional impact such that other municipalities needed to be notified prior to the board's voting on the permit. The abutters argue that the video of the board's hearing shows the college's expert arguing that the lighting "would not impact surrounding properties . . . [due to] the fact that the football field was below grade and the existence of a large vegetative area" between it and the abutters' property and that the expert gestured to the vegetative area with a laser pointer. On the contrary, the video shows that the expert stated that they had <u>not</u> taken into account that the field was below grade or the presence of the "large vegetative area" when calculating the amount of light from the fixtures in terms of foot-candles at the ground.

Accordingly, we conclude that the evidence supported the trial court's findings that: (1) "[b]ut for the aerial photograph, . . . there was no specific description, comment, question or discussion about the vegetation that lays along the bounds of the parties' land"; and (2) there was no "discussion in connection with the vegetation about . . . reflective light coming onto the neighboring property."

To the extent that the abutters contend that simply displaying the out-of-date aerial photograph, showing a buffer between the parties' properties in a condition that no longer existed, constituted a representation to the board and created an implied condition on the permit, we disagree. The abutters argue that we must presume that the board: (1) assumed that the aerial photograph accurately depicted the current "scope of a vegetative area"; (2) considered the "potential compatibility" of the lights with surrounding properties, as required by the ordinance; and (3) "considered all relevant matters," including the extent to which the vegetative area would buffer the abutters' property from the lights. Furthermore, they argue that the board understood the vegetative area to be "a thickly wooded area" because it described it as such in connection with its consideration of regional impact and immediately before its vote on the permit.

However, the trial court found that that "[t]here is nothing in the record of the [board] to suggest that any member even considered or noticed the trees as depicted by the aerial photograph, let alone relied upon the photograph." We conclude that the record supports this finding. The trial court noted that the college "was not relying on the vegetation to block light, but rather was relying on . . . the type and height of the fixtures to address the light impact on its neighbor." The abutters argue that this did not "render other mitigation considerations, such as a buffer, irrelevant." However, it does support the trial court's conclusion that the board did not consider the vegetative area when

3

making its decision. The abutters argue that the expert's testimony regarding the limited light spillage from the proposed fixtures was "necessary to satisfy the second element for a conditional use permit." This does not, however, establish that the board did not consider this testimony in other contexts. The abutter argues that the expert's presentation addressed only "light spilling off the site at ground level," but "potential light pollution was not limited to ground level." Although this may be correct, the record does not show that the board considered mitigation of light pollution above ground level to be necessary.

The trial court noted that the ZBA discussed that: (1) the board "would normally note any conditions on a permit and did not do so in this case"; and (2) most of the vegetative area was located on the abutters' property, and, therefore, the board "could not require [the college] to maintain" it. The abutters argue that lack of a written condition is immaterial because they are not relying upon an express condition. However, the absence of a notation regarding the buffer supports the trial court's conclusion that the board did not consider it to be a condition. The abutters argue that the college implied that the vegetative area was on its land. However, the absence of any determination by the board as to the ownership of the area supports the trial court's conclusion that the board did not consider it.

Furthermore, the trial court noted that the ZBA did not address "the specifics of the buffer, such as the height, width, and type of the trees, as would be typical." The aerial photograph contains no such detail. Furthermore, it does not show the density of the vegetative area. The trial court noted that, absent such information, any condition involving the vegetative area "could not be easily enforced." The abutters argue that there is no "'easy enforcement' exception" to the rule that representations become implied conditions and that the college should not be absolved of its "self-created hardship," but should "seek a modification of the approval." They further argue that the board engaged in "little or any discussion relative to any [of] the elements" of the permit. However, the fact that the board did not discuss the specifics of the vegetative area supports the trial court's conclusion that it did not consider it to be a buffer or a condition of the permit.

The abutters argue that their failure to attend the board's hearing or to appeal its decision is irrelevant because they were not required to appear and object to the college's "misrepresentations . . . in order to enforce [the] approval." Although the trial court noted these failures, we conclude that it did not rely upon them in determining that the vegetative area represented on the aerial photograph was not an implied condition of the permit. See Fischer, 163 N.H. at 519. The abutters contend that the trial court and the ZBA "appear to have relied principally upon the minutes" of the board's hearing, rather than upon the video of the hearing. However, they offer no support for this contention, other than the fact that the trial court and the ZBA found that the college did not make

representations regarding the existence of a buffer to protect surrounding properties from the lights.

Because we conclude that the trial court's finding that the college did not make any representation regarding the vegetative area's function as a buffer is supported by the record, we need not address its further finding that the board did not rely up such a representation. We express no opinion regarding whether the college's use of the lights constitutes a common law nuisance.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**